IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03792-MEH

GAVINO LUCERO,

     Plaintiff,

v.

SAFEWAY, INC., and
SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.,

     Defendants.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge.**

     Before the Court is the Motion to Dismiss (ECF 33) by Defendant Sedgwick Claim Management Services, Inc. ("Sedgwick") and the Motion for Amendment of Complaint (ECF 57) by Plaintiff. The Motion to Dismiss is fully briefed. Plaintiff did not file a reply in support of his Motion for Amendment of Complaint despite two extensions of time (ECF 62 & 64). The Court finds that oral argument would not materially assist in the Motions' adjudication. Based upon the record herein and for the reasons that follow, the Motion to Dismiss is granted and the Motion for Amendment of Complaint is denied.

## <u>BACKGROUND</u>

I.    **Allegations**

     At issue is Plaintiff's Second Amended Complaint ("SAC"). The Court accepts Plaintiff's well-pleaded allegations as true for present purposes.

Plaintiff worked for Defendant Safeway, Inc. ("Safeway") at its Denver Distribution Center from December 1, 1999 to November 26 or 27, 2019. ECF 32 at ¶ 1. He also belongs to a labor union. *Id*. at ¶ 24. Safeway fired him five days before the twentieth anniversary of his employment, which if he had remained employed would have meant an increased benefits level. *Id*. at ¶ 67, n.5.

Plaintiff identifies himself as a Hispanic male of Mexican lineage who "does not have white skin." *Id*. at ¶ 43. This lawsuit is not premised on race or national origin discrimination, however, but on a medical condition. Plaintiff has psoriatic arthritis, first diagnosed in September 2009. *Id*. at ¶¶ 43, 61.

On November 13, 2019, Plaintiff filed an internal grievance concerning Safeway's failure to honor his leave requests related to his medical condition and the increasing retaliation he suffered in response to taking medical leave. *Id*. at ¶ 51. At the end of that same workday, "Safeway management-level employees attempted to force [him] into an interview without providing [him] any justification for sequestering him." *Id*. at ¶ 53. They suspended his employment "without explanation" "pending an investigation of an unknown sort." *Id*. at ¶ 54. Plaintiff was escorted off site and "forbidden from returning." *Id*. at ¶ 54. A Safeway manager later called him to tell him that his employment was terminated. *Id*. at ¶ 55. Not only was the termination itself an adverse action against him, but Safeway knew that his medical condition would hinder his ability to find a new job. *Id*. at ¶ 58.

Plaintiff denies knowing the reason for his immediate suspension at least at the time on November 13, 2019. However, he concedes that his use a box cutter with an impermissibly long blade played a role. *Id*. at ¶¶ 229-231. At some point later, he received a report from an

2

investigation that Safeway had conducted. It "contained statements attributed to many other managers and employees of Safeway." *Id*. at ¶ 56.

Plaintiff paints a picture of wide-ranging adverse employment actions against him. Safeway repeatedly denied leave to go vote. *Id*. at ¶¶ 90-99, 152. Various actions and attitudes created a hostile work environment. *Id*. at ¶ 115. He was denied favorable job assignments because of his absences (*id*. at ¶ 257), and he was the only employee given an extra work assignment on November 4, 2019 (*id*. at ¶ 218). On October 29, 2019, he complained that his supervisor denied him downtime "in an improper and inappropriate manner." When he went to complain about it, his supervisor commented, "what makes you think you can run over to HR for every little thing like you always do?" *Id*. at ¶ 219. However, the primary issue concerns his medical condition and the "animosity" over "his need for intermittent leave at unpredictable times." *Id*. at ¶ 59. He also alleges retaliation for taking FMLA leave to care for his wife. *Id*. at ¶¶ 136-138.

Responsible for creating the hostile work environment and carrying out the adverse employment actions were many Safeway employees and managers at all levels of authority. This went on for many years, but worsened during the last several months of his employment, culminating with his termination. He alleges that his termination was premised on a falsified record. Many acted in concert to portray Plaintiff as mentally unstable, violent, and a danger to the workplace. *Id*. at ¶ 75. Many helped develop an inaccurate history of excessive medical leave. *Id*. at ¶¶ 113-114. Safeway failed to preserve records and evidence. *Id*. at ¶¶ 124-131.

He describes a very broad group of Safeway employees who schemed against him. However, he was not the lone victim. He says that Safeway engages in similar discriminatory,

retaliatory, or other adverse conduct against other employees, especially those in the warehouse. *Id*. at ¶¶ 79-86.

Plaintiff filed a discrimination charge with the EEOC on December 4, 2019. *Id*. at ¶ 118. His EEOC charge concerned only Safeway and was based on employment discrimination. ECF 2.

Plaintiff says that Sedgwick "administered employee benefits for Safeway in Colorado including [his] benefits . . . as part of the terms of his employment with Safeway." ECF 32 at ¶ 3. Generally, he refers to Safeway as the source of his employment and to Sedgwick as the administrator of his employment benefits. *Id*. at ¶¶ 176, 208. Plaintiff also refers to Safeway as the principal and Sedgwick as its agent, and because of that relationship, Safeway is responsible for Sedgwick's actions. *Id*. at ¶ 268. Otherwise, he makes little distinction between the two entities. He contends that "Safeway and Sedgwick are legally responsible, jointly and severally, for the conduct of their employees and agents in causing Plaintiff to suffer adverse employment actions without legal support or justification." *Id*. at ¶ 40.

Plaintiff accuses both Safeway and Sedgwick of failing to document properly and accurately his workhours, leave hours, FMLA requests, and FMLA disputes. *Id*. at ¶¶ 105-107. The deliberately incorrect recordkeeping caused him to accrue "points" for which he was penalized. *Id*. at ¶¶ 109, 113.

Plaintiff alleges that Sedgwick unlawfully denied him FMLA leave, requested more documentation that FMLA permits, and burdened his ability to obtain medical leave. *Id*. at ¶ 135. If he raised complaints or filed grievances, Sedgwick would change assessments or give incorrect information. *Id*. at ¶ 140.

4

In sum, Plaintiff contends that Safeway and Sedgwick acted with the common goal to harm him, "including at minimum the denial of further medical leave and/or other types of leave" and "the creation of a false justification for what was in reality a pretextual termination of [his] employment." *Id*. at ¶¶ 154-155.

## II.    Claims for Relief

The SAC asserts six causes of action against Safeway. They are Outrageous Conduct— Intentional Infliction of Emotional Distress ("IIED") and Civil Conspiracy as well as violations of the Family Medical Leave Act, 29 U.S.C. § 2615 ("FMLA"); the Americans with Disability Act, 42 U.S.C. §§ 12102-12213 ("ADA"); Title VII; and Colorado's Anti-Discrimination Act, Colo. Rev. Stat. §§ 24-34-402, *et seq*., ("CADA").

Three of the above counts—IIED, Civil Conspiracy, and FMLA—also are brought against Sedgwick. Although Plaintiff includes Sedgwick in them, there is little differentiation between the respective actions of Sedgwick and Safeway. The general implication is that Sedgwick had equal influence over the terms of his employment including termination. However, there are exceptions in which Plaintiff does attribute a specific act of wrongdoing to Sedgwick. For the IIED count, Plaintiff alleges that Sedgwick "falsified and misrepresented the availability of medical leave and whether the leave [he] had taken was covered or allowed under any law or policy." ECF 32 at ¶ 151. For the FMLA count, Plaintiff alleges that on November 6, 2019 when Sedgwick informed him "that he did not have FMLA leave available," Safeway "then assigned him points to his employment file" which required him to work overtime to remove. Both Sedgwick and Safeway knew or should have known that he did qualify for FMLA leave at the time of that particular request. *Id*. at ¶ 196.

Plaintiff claims $1.3 million in monetary damages. ECF 44 at 5.

## III.   Procedural History

Plaintiff commenced this civil action over a year ago on December 25, 2020. The initially named Defendants were Safeway; "its parent corporation" (ECF 32 at ¶ 7), Albertsons Companies, Inc., ("Albertsons"); and twenty-three individual Safeway employees and managers. Mirroring the large number of Defendants named and the breadth of the scheme alleged, his first complaint included a RICO claim (ECF 1 at 35).

Plaintiff amended his complaint as a matter of course, resulting in the First Amended Complaint at ECF 22. For it, he dropped the individual Safeway employees and Albertsons as named Defendants but added Sedgwick. He also removed the RICO claim. Plaintiff amended his complaint again, this time "to clarify the claims against each Defendant." ECF 30 at ¶ 1. That resulted in the SAC (ECF 32), filed on August 3, 2021. Although there no longer is a RICO claim, the allegation of a broad scheme of wrongdoing remains.

With the SAC as the operative pleading, the Court held the Scheduling Conference on August 26, 2021. The Scheduling Order was entered thereafter. ECF 44. It set October 12, 2021 as the deadline to join parties and amend pleadings. *Id*. at ¶ 9(a).

Safeway answered the SAC. ECF 41. However, Sedgwick moved to dismiss the claims raised in the SAC against it, which is the subject of this ruling. Plaintiff responded to Sedgwick's Motion to Dismiss by voluntarily dismissing the IIED and FMLA claims against it. ECF 52.

Also subject of this ruling is Plaintiff's Motion for Amendment of Complaint filed on October 13, 2021 (ECF 57), in which he seeks to add negligence claims and re-add Albertsons and

three Safeway managers as Co-Defendants. This would be his Third Amended Complaint ("TAC").

## LEGAL STANDARDS

### I.  Rule 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. *Twombly* requires a two-prong analysis. First, a court must exclude "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Iqbal*, 556 U.S. at 679–80. Second, a court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the well-pleaded averments state a plausible claim for relief, then it survives a motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on

context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). "The plausibility standard does not require a showing of probability that 'a defendant has acted unlawfully,' but requires more than 'a sheer possibility.'" *Parshall v. Health Food Assocs., Inc.*, No. 14-4005-JAR, 2014 WL 2547761, at *1 (D. Kan. June 5, 2014). While the Rule 12(b)(6) standard does not require that a plaintiff establish a *prima facie* case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.*

## II.   Leave to Amend

The Scheduling Order set October 12, 2021 as the deadline to join parties and to amend the pleadings. ECF 44 at 8. Plaintiff filed his motion to amend one day later, on October 13, 2021. The Court will treat the motion as timely and not subject to the good cause standard of Fed.R.Civ.P.

16(b)(4). Nevertheless, even under the lesser standard of Fed.R.Civ.P. 15(a), the Court sees no basis to permit the proposed amendments.

### A.      Rule 15(a)

Fed.R.Civ.P. 15(a)(2) states that after the deadline for amending a pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The grant or denial of an opportunity to amend is within the discretion of the Court, but outright refusal to grant leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules. *Maloney v. City of Pueblo*, 323 F.R.D. 358, 360 (D. Colo. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Id.* (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

Prejudice in this context arises when the amendment unfairly affects the opposing party "'in terms of preparing their defense to the amendment.'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) (quoting *Patton v. Gayer*, 443 F.2d 79, 86 (10th Cir. 1971)). Prejudice occurs most often "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.* Moreover, "[i]f a party opposes a motion to amend or to supplement on the grounds of futility, the court applies the same standard to its determination of the motion that governs a motion to dismiss under Fed. R. Civ. P.

12(b)(6)." *Conkleton v. Zavaras*, No. 08–cv–02612–WYD–MEH, 2010 WL 6089079, at *3 (D. Colo. Oct. 6, 2010), *Rec. adopted by* 2011 WL 839282 (D. Colo. Mar. 7, 2011).

### B.       Undue Delay

Untimeliness alone may be sufficient basis to deny a party leave to amend. *Duncan v. Manager, Dep't of Safety,* 397 F.3d 1300, 1315 (10th Cir.2005); *Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001). The important inquiry is not simply whether a delay occurred, but whether it was undue. *Minter*, 451 F.3d at 1206. Delay is undue "when the party filing the motion has no adequate explanation for the delay," *Frank,* 3 F.3d at 1365-66, or when "the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint," *Las Vegas Ice & Cold Storage Co. v. Far West Bank,* 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984)).

### C.       Futility

Futility also is a relevant factor. *Moore v. Reynolds*, 153 F.3d 1086, 1116 (10th Cir. 1998). An amendment is futile if the amended complaint still would be subject to dismissal. *Jefferson Cty. Sch. Dist. v. Moody's Investor's Servs., Inc*., 175 F.3d 848, 858-59 (10th Cir. 1999). To make that determination, the Court considers the proposed amendments through the lens of Fed.R.Civ.P. 12(b)(6).

<u>**ANALYSIS**</u>

Because the legal arguments are related, the Court examines whether Plaintiff pleads any plausible claims for relief against Defendant Sedgwick either in his SAC or proposed TAC. Consequently, the Court considers Sedgwick's Motion to Dismiss and Plaintiff's Motion for

10

Amendment of Complaint together. The Court also reviews the additional changes that Plaintiff asks to make.

## I.     FMLA

Although Plaintiff voluntarily dismisses Sedgwick from the FMLA count, it remains a Defendant to the Civil Conspiracy count (a derivative cause of action that presumably is based on FMLA violations). Sedgwick also would be the Defendant to one of the negligence claims in Plaintiff's proposed TAC. The subject of Plaintiff's negligence claims is the handling of his FMLA requests. Indirectly, therefore, Sedgwick remains subject of the FMLA allegations despite the voluntary dismissal, and for that reason, the Court still must consider whether Plaintiff states a plausible FMLA claim against Sedgwick.

The FMLA provides a cause of action to an employee against an *employer* for interfering with any FMLA right. 29 U.S.C. §§ 2612 and 2617(a)(2). The burden is on the plaintiff-employee to establish that the defendant accused of violating his or her FMLA rights is a covered employer. *Florez v. Holly Corp.*, 154 F. App'x 707, 708 (10th Cir. 2005).

The FMLA defines an "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees" and includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A). "Normally the legal entity which employs the employee is the employer under FMLA," and in "[a]pplying this principle, a corporation is a single employer rather than its separate establishments or divisions." 29 C.F.R. § 825.104(c). If more than one business exercises some control over the employee's work or working conditions, then the employee may have "joint employers." Other factors relevant to the existence of a joint

employment relationship are if the employee's work simultaneously benefitted both employers; the employee worked for both employing entities at different times; the joint employers arranged to share the employee's services; or one employer acted directly or indirectly in the interest of the other employer in relation to the employee. 29 C.F.R. § 825.106(a).

The *Florez* opinion illustrates what constitutes the direct employer in the FMLA context. There, the Tenth Circuit affirmed summary judgment in favor of the parent corporation (Holly Corporation) that owned Florez's employer (Navajo Refining Company) even though Holly managed Navajo's employment benefit plan. *Florez*, 154 F. App'x at 709. The Tenth Circuit relied on the general rule "that a parent company's actions as an administrator for a subsidiary's employee benefits program do not amount to 'excessive control . . . over [the subsidiary's] employment practices.'" *Id.* (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993)). For the same reason, Safeway's owner, Albertsons, would not count as Plaintiff's employer. As for Sedgwick, it is further removed from Plaintiff's employer because it has no ownership interest in Safeway.

Expressly *excluded* as an employer for FMLA purposes is the "type of company that is often called a Professional Employer Organization (PEO)" that client employers hire "to perform administrative functions such as payroll, benefits, regulatory paperwork, and updating employment policies." 29 C.F.R. § 825.106(b)(2). "A PEO does not enter into a joint employment relationship with the employees of its client companies when it merely performs such administrative functions." A PEO may be considered a joint employer only if it "has the right to hire, fire, assign, or direct and control the client's employees, or benefits from the work the employees perform." Deeming a PEO to be a joint employer depends on the "particular fact

12

situation" and "the economic realities of the situation," and the determination "must be based upon all the facts and circumstances." *Id*.

As in *Marshall v. Whirlpool Corp*., No. 07-CV-534-JHP-TLW, 2010 WL 348344 (N.D. Okla. Jan. 26, 2010), Sedgwick is a separate entity with its own employees whose involvement with Safeway is limited to that of a third-party benefits administrator pursuant to a contract. Marshall worked for Whirlpool. The court dismissed Marshall's FMLA claim against UniCare, the benefits administrator, because it "was in no way involved in Whirlpool's employment decisions" and thus "was not [her] employer." *Marshall*, 2010 WL 348344 at *5-6. Relying on *Marshall* and other case law, the court in *Acker v. General Motors, LLC*, No. 15-CV-706-A, 2015 WL 8482306 (N.D. Tex. Dec. 8, 2015) dismissed a FMLA claim brought against Sedgwick. At issue in that lawsuit was Acker's allegation that Sedgwick illegally denied his FMLA leave requests and was disciplined (presumably by GM) for taking unapproved FMLA leave. *Id*. at *1. Also relying on *Marshall* and other case law, the court in *Pride v. Wal-Mart Stores East, LP*, No. 19-cv-0680-JMY, 2019 WL 5862171 (E.D. Pa. Nov. 8, 2019), likewise dismissed an FMLA claim brought against Sedgwick—even despite Pride's allegation that Sedgwick's failure to forward his doctor's "return to work" certification to Wal-Mart had a direct influence on his termination.

Although Sedgwick was involved in the handling of Plaintiff's FMLA leave requests, the SAC establishes that it did so within the role of a PEO. The SAC contains no specific fact averments that plausibly suggest that Sedgwick also acted as his *employer*. Nor does Plaintiff raise any argument for how Sedgwick could share in FMLA employer liability. Instead, he voluntarily dismisses Sedgwick from the FMLA claim.

13

Plaintiff does want to sue three individual managers for violating his FMLA rights. ECF 57-2 at ¶¶ 188-227. While they may have been involved in decisions regarding leave and other employment matters and may have exercised supervisory authority over him, the proposed TAC does not indicate how they could be considered his "employers" for FMLA liability purposes. The amendment would be futile because the TAC would state no plausible FMLA claim against them. By the same token, the TAC states no plausible FMLA claim against Safeway's owner, Albertsons, with whom the pleadings show no employment relationship.

## II.    Conspiracy

Count IV of the SAC is for Civil Conspiracy. Plaintiff alleges that Safeway and Sedgwick acted together to violate the "Colorado Employment Security Act, C.R.S. § 10-16-1003; FMLA; ADA; Title VII of the Civil Rights Act of 1964; and other applicable laws and regulations." ECF 32 at ¶ 228. The SAC contains counts for FMLA, ADA, and Title VII violations, and of them, Sedgwick is named as a Co-Defendant only to the FMLA one. Plaintiff now voluntarily dismisses Sedgwick from the FMLA count, but he leaves Sedgwick as a Co-Defendant to the derivative conspiracy count.

An unlawful civil conspiracy requires (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) an unlawful overt act, and (5) damages as the proximate result. *Sensoria, LLC v. Kaweske*, No. 18-cv-02646-MEH, 2021 WL 103020, at *11 (D. Colo. Jan. 12, 2021) (citing *Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1480 (D. Colo. 1996)). "[A]n unlawful 'conspiracy' consists of more than common action. It is defined by a meeting of the minds and separate, independent conduct in furtherance of the unlawful goal." *Sensoria, LLC v. Kaweske*, — F. Supp. 3d —, 2021 WL 2823080, at *14 (D.

Colo. 2021). *See also Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010) (emphasizing the need of concerted action with some sort of mutual agreement or conspiratorial objective). Civil conspiracy "is not actionable *per se*," but rather "is essentially a means of holding one defendant liable for the substantive wrongs committed by another." *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1122 (D. Colo. 2010) (explaining the nature of conspiracy liability). It permits a finding of liability against a defendant who may not have fully participated in the unlawful act but nevertheless conspired to bring it about. *Id*.

The mere fact that Sedgwick was involved in the handling of Plaintiff's FMLA leave requests is insufficient. *Leatherwood v. Rios*, 705 F. App'x 735, 739 (10th Cir. 2017). Sedgwick must have acted on its own in furtherance of the conspiratorial goal.

Sedgwick's involvement in the handling of Plaintiff's FMLA leave requests was as a plan administrator hired by Safeway. In other words, Sedgwick's involvement is analogous to that of Safeway's agent, independent contractor, or "employee." As a general matter of Colorado law, the involvement of a corporation and its employees does not count as "two or more persons" for the first element of a conspiracy. *Martensen v. Koch*, No. 13-cv-02411-REB-CBS, 2014 WL 3057172, at *5-6 (D. Colo. July 7, 2014). The "intracorporate conspiracy doctrine" extends to agents and independent contractors of a corporation. *Id*. An entity cannot conspire with itself. The entity's agents and employees who were acting within the scope of their duties on its behalf are not conspirators. *Id*. The principal has the right throughout the duration of the relationship to control the agent's acts. *Id*.

The exception to the doctrine is when the agent, independent contractor, or employee has his own "independent personal stake in achieving the corporation's illegal objective." *Martensen*,

15

2014 WL 3057172 at *6. To state a claim of conspiracy against both a corporation and its agent representative, the representative must have "acted in his personal interests, wholly and separately from the corporation." *Id*. (internal citation omitted).

There is no substantive allegation that Sedgwick benefitted independently from the alleged conspiratorial actions. The court in *Shaffer v. Nat'l Health Ins. Co*., No. 17CV195, 2018 WL 1995525, at *6-7 (N.D.W.V. Apr. 27, 2018) dismissed the insureds' claim of conspiracy between their insurer and the insurer's third-party plan administrator in the handling of their insurance policy claim because the plan administrator received no "individual advantage" from the alleged conspiracy. Here, neither the SAC nor the proposed TAC indicates how Sedgwick acted outside the scope of its contractual relationship with Safeway as the FMLA plan administration and for an independent benefit. In an analogous situation, this Court dismissed a conspiracy claim for the plaintiff's failure to plead "involvement in the fraud scheme separate and apart from the [defendants'] role as the other Defendants' attorneys," and with "no indication of any direct financial benefit from the scheme" other than their regularly paid legal fees. *Sensoria,* 2021 WL 2823080 at *14

There is no indication that Sedgwick *agreed* to act in concert with Safeway to violate Plaintiff's FMLA rights. *Canfield v. Douglas Cty*., 619 F. App'x 774, 778 (10th Cir. 2015). Plaintiff must plausibly plead the existence of an agreement by Sedgwick to enter a conspiracy with Safeway (that is separate and apart from their contractual relationship to handle FMLA leave matters). The Court may not infer the agreement's existence, and by this point in the case's development, Plaintiff should be able to plead a basis for finding a conspiratorial agreement. *Martensen*, 2014 WL 3057172 at *7. Plaintiff states that the "meeting of the minds" element "is

16

evident through various facts pled herein, ¶¶ 32-124." ECF 32 at ¶ 226. Rather, it is for Plaintiff to plead how the element is plausibly stated, not for the Court on its own to figure that out from the rest of the SAC.

A civil conspiracy claim is derivative in nature. There can be no conspiracy without an underlying violation of the law sufficient to create its own independent cause of action. *Ubel v. Progressive Direct Ins. Co.*, No. 20-cv-00204-RM-NYW, 2020 WL 9432929, at *22 (D. Colo. Oct. 22, 2020); *Martensen*, 2014 WL 3057172 at *7. As noted above, Plaintiff does not plead how Sedgwick can be held liable for any alleged FMLA violations because he does not plead how Sedgwick is a covered employer.

Plaintiff does not defend its civil conspiracy theory with a discussion of the case law. Rather, he explains it by way of an analogy in which Safeway is a bank robber and Sedgwick is the driver of the get-away car. That analogy itself explains why the civil conspiracy claim is not plausible. Even in his own telling of that story, there is no indication that the driver of the get-away car knew Safeway intended to rob the bank, much less agreed to join the criminal undertaking. As Safeway's regular driver, Sedgwick was involved in the robbery in the purely practical sense of acting within the scope of its duties. There is no indication that Sedgwick was a deliberate participant in bank robbery, itself; wanted Safeway to rob the bank; or benefitted from it beyond being Safeway's regularly employed driver.

In response to Sedgwick's Motion to Dismiss, Plaintiff also repleads his Civil Conspiracy claim against Sedgwick in his proposed TAC. ECF 57-2 at ¶¶ 251-278. The TAC suggests an awareness of the need to identify more specific acts to further the conspiracy theory, and to that end, it includes more references to Sedgwick. In substance, however, the pleading remains the

same. Plaintiff still offers little to show how Sedgwick acted beyond its role as the FMLA plan administrator and participated in an unlawful conspiracy. At most, Plaintiff suggests that Sedgwick was negligent in handling his FMLA leave requests. As for the defining elements of an unlawful conspiracy, the TAC remains conclusory in nature. Plaintiff suggests that future discovery may reveal the conspiratorial acts and goals, but the implication is that he is unable to describe the conspiracy at this time.

Plaintiff also seeks to include Albertsons and three Safeway managers in the proposed amended conspiracy count. For the same reasons there is no plausible conspiracy claim against Sedgwick, there is none against them. Plaintiff says that Albertsons "is engaged in the business operations of Safeway taking place in Colorado due to its corporate ownership of Safeway." ECF 57-2 at ¶ 4. In a conclusory fashion, Plaintiff describes Albertsons' involvement in the conspiracy as agreeing to and engaging in "acts in furtherance of the conspiracy by and through its ownership of Safeway including the direction, and control of Safeway's policies, procedures, and actions." *Id*. at ¶ 262. With respect to the three individuals, Plaintiff describes them as "employed by Safeway and/or [Albertsons] at the Denver Distribution Center." *Id*. at ¶ 5. They "took acts in furtherance of this conspiracy by participating in the creation of the response on behalf of Safeway to the EEOC charge of discrimination Plaintiff timely filed." *Id*. at ¶ 261. They, along with Sedgwick, Safeway, and Albertsons, "attempt[ed] to deny Plaintiff his rights under FMLA." *Id*. at ¶ 267. Plaintiff details their involvement in decisions regarding FMLA leave and other aspects of his employment. *Id*. at ¶¶ 143-145. What remains lacking is how either Albertsons (in its role as Safeway's owner) or the Safeway managers independently agreed to enter the alleged conspiracy and benefitted therefrom.

The absence of a civil conspiracy claim does not deprive Plaintiff of a means for redress if his FMLA rights were violated in some way. As the principal, Safeway ultimately is responsible for the acts of its agent Sedgwick in how the FMLA plan was administered. In the same way, Safeway is the respondeat superior who is liable for any FMLA violations that its employees may have caused. Plaintiff's FMLA cause of action is against Safeway, not Safeway's individual employees, third-party plan administrator, or corporate owner. Plaintiff uses the civil conspiracy claim to expand liability for the alleged FMLA violations beyond his direct employer. Those additional parties (except for Albertsons) may have been involved, and Safeway is bound by their actions. However, it does not necessarily follow that they themselves are liable should an FMLA violation be found.

The Court dismisses Sedgwick from the civil conspiracy claim. For the same reasons, it would be futile to add Albertsons and the three managers as Defendants to it. Because that leaves only Safeway—and a conspiracy requires more than just one participant—the Court dismisses the Civil Conspiracy count on the whole.

## III.   Negligence

Plaintiff asks to add two negligence claims. The first essentially restates his FMLA violation allegation. He contends that Sedgwick not only inadequately trained its employees on how to handle his FMLA benefits, but it allowed Safeway and its employees "to impose unlawful restrictions or conditions on [his] FMLA leave and participated in administering [his] FMLA leave under such conditions." ECF 57-2 at ¶319. In whatever way Sedgwick negligently mishandled Plaintiff's FMLA leave requests, ultimately it is Safeway (the principal in the relationship with Sedgwick and the employer in the relationship with Plaintiff) that is liable for any violation of

Plaintiff's FMLA rights. In the same way the FMLA preempts a claim of retaliatory discharge for taking FMLA leave in violation of public policy, *Torberson v. BOKF NA*, No. 19-cv-03195-WJM-STV, 2021 WL 3418723, at *6 (D. Colo. Aug. 5, 2021), it provides the exclusive remedy for any other violation of Plaintiff's FMLA rights. FMLA consists of "comprehensive detailed enforcement provisions" that "focuses on very specific injuries and delineates narrowly the remedies for those injuries." *Cisneros v. Colorado*, No. 03-cv-02122-WDM-CB, 2005 WL 1719755, at *11 (D. Colo. July 22, 2005) (precluding the plaintiff from reframing his FMLA claim as a Section 1983 cause of action).

Plaintiff's proposed TAC also includes a negligence count against Safeway and Albertsons, but it is not based on FMLA rights. It concerns instead the handling of his and his wife's medical insurance. Plaintiff alleges that on at least four occasions over the course of many years, Safeway and Albertsons negligently failed to pay his health insurance premium. ECF 57-2 at ¶¶ 328-336. As a result, his wife had to place the family on her employer's health insurance plan which cost more and required a change in doctors. *Id*. at ¶¶ 153-160. This negligence claim is an indirect way of pleading a breach of contract, the more appropriate cause of action for this particular grievance. As a general rule, Colorado law does not recognize an independent tort action for the breach of duties imposed by contract. *Tuchman v. Pell Rudman Trust Co., NA*, 245 F. Supp. 2d 1156 (D. Colo. 2003).

Defendants also point out the two-year statute of limitations for a negligence claim that Colo. Rev. Stat. § 13-80-102(a) imposes. The focus of the underlying FMLA violations and adverse employment actions seem to be the several months preceding his termination in late November 2019. Because he filed his Motion for Amendment on October 13, 2021, he potentially

raises it before the statute of limitations had run. It is possible it would not bar the negligence claim against Sedgwick (were the Court otherwise to permit its addition). However, there is no firm time frame for his negligence claim against Safeway and Albertsons in his proposed Count VIII which means a possible statute of limitations concern with respect to it.

At least as framed in the proposed TAC, the Court sees no negligence theory of sufficient viability to warrant adding to the complaint. FMLA-based "negligence" is preempted by federal statute. Should Plaintiff wish to continue with his negligence claim for the handling of his health insurance premium, he may file a new motion for leave to amend, but should he do so, he must overcome the economic loss doctrine and statute of limitations concerns identified above.

## IV.    Adding Mrs. Lucero as a Plaintiff

Plaintiff seeks to add his wife as Co-Plaintiff "so that her specific damages learned of may be redressed without need for a duplicative or perhaps improper separate action." ECF 57 at ¶ 2(a). His Motion for Amendment provides no further explanation for adding his wife. Upon reviewing the proposed TAC (ECF 57-2), it appears that her claim for damages concerns the health insurance issue (*id*. at ¶¶ 153-160, 328-336), as well as a generalized assertion that both Plaintiff and she "were damaged as a result of" Sedgwick's negligence (*id*. at ¶ 326). Because Plaintiff does not establish a viable negligence claim, at least as currently framed, it would be futile to add Mrs. Lucero as a Co-Plaintiff.

## V.    Leave to Amend

Even under the lesser standard of Fed.R.Civ.P. 15(a), the Court sees no basis to permit the proposed amendments. Although he files the Motion within the time frame contemplated by the Scheduling Order (ECF 44 at 8), that deadline is still ten months after he had commenced the

lawsuit. At this point Plaintiff should be able to explain the need for the requested amendments. None of the parties that Plaintiff seeks to join are newly discovered. Nor does he assert causes of action of which he only recently could have become aware. He references Defendants' initial disclosures and the review of other discovery. Defendants dispute that the discovery revealed anything significant that was not known earlier, and Plaintiff does not explain exactly how the discovery justifies the proposed amendments. Indeed, the Motion for Amendment of Complaint is very brief and conclusory.

Despite the Motion's brevity and the lack of a supporting Reply, the Court nevertheless has considered the appropriateness of the amendments. Having done so, the Court finds that none of the requested changes state a plausible claim for relief, and consequently, it would be futile to add them. Although there are some timeliness concerns, futility is the primary reason for the Motion's denial.

## CONCLUSION

Not at issue in this ruling are the claims of employment law violations that Plaintiff raises against his employer, Safeway. What this Court does consider is whether he may expand those claims to include others who are outside the direct employer-employee relationship. Having done so, the Court finds none of those theories to state a plausible cause of action.

Accordingly, the Defendant Sedgwick's Motion to Dismiss [filed August 12, 2021; ECF 33] is **granted**. On the basis of both Plaintiff's voluntary dismissal and the above legal analysis, Defendant Sedgwick is dismissed as a party, and the Court takes the further step to dismiss the Civil Conspiracy count in full. Those dismissals are with prejudice. The Court sees no basis by which Plaintiff could plead the conspiracy theory in a way that would state a plausible claim.

Moreover, Plaintiff's Motion for Amendment of Complaint [filed October 13, 2021; ECF 57] is

**denied**.

      Dated at Denver, Colorado, this 7th day of January, 2022.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

23